UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CORINNA M. BURRELL,                          Case No.  14-14529

          Plaintiff,                        Linda V. Parker
v.                                           United States District Judge

COMMISSIONER OF SOCIAL SECURITY,             Stephanie Dawkins Davis
                                             United States Magistrate Judge
          Defendant.
_____/

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkts. 15, 17)**

## I.   PROCEDURAL HISTORY

    A.   Proceedings in this Court

On December 1, 2014, plaintiff Corinna Burrell, filed the instant suit seeking judicial review of the Commissioner's unfavorable decision disallowing benefits. (Dkt. 1).  Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge Linda V. Parker referred this matter to Magistrate Judge Michael Hluchaniuk for the purpose of reviewing the Commissioner's decision denying plaintiff's claim for a period of disability and disability insurance benefits. (Dkt. 4).  On January 5, 2016, the case was subsequently reassigned to the undersigned pursuant to Administrative Order.  This matter is before the Court on cross-motions for summary judgment.  (Dkts. 15, 17).

B.    Administrative Proceedings

Plaintiff filed the instant claim for disability insurance benefits on October 17, 2011.  (Dkt. 12-5, Pg ID 225-231).  The same day, plaintiff filed a claim for social security income benefits.  *Id*. at 232-237.  In both applications, plaintiff alleged disability beginning November 1, 2008.  The claims were initially disapproved by the state agency responsible for making disability determinations on behalf of the Commissioner on May 31, 2012.  (Dkt. 12-4, Pg ID 183-191).  Plaintiff requested a hearing and on May 17, 2013, plaintiff appeared with counsel before Administrative Law Judge ("ALJ") John Dodson, who considered the case de novo.  (Dkt. 12-2, Pg ID 122-140).  In a decision dated July 26, 2013, the ALJ found that plaintiff was not disabled.  *Id*. at 101-114.  Plaintiff requested a review of that decision, and the ALJ's decision became the final decision of the Commissioner when the Appeals Council, on October 1, 2013, denied plaintiff's request for review.  *Id*. at 42-48); *Wilson v. Comm'r of Soc. Sec*., 378 F.3d 541, 543-44 (6th Cir. 2004).

For the reasons set forth below, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **GRANTED IN PART AND DENIED IN PART**, that defendant's motion for summary judgment be **GRANTED IN PART AND DENIED IN PART**, and that the findings of the Commissioner be **REVERSED IN PART AND REMANDED** for proceedings in

accordance with this report and recommendation.

II.   **FACTUAL BACKGROUND**

A.   <u>ALJ Findings</u>

Plaintiff was born on November 25, 1980, and was 27 years old as of her alleged disability onset date, and 32 years old at the time of the administrative hearing.  (Dkt. 12-2, Pg ID 112).  Plaintiff has past relevant work as a sales associate, direct care worker, fast food worker, pizza cook, and fast food manager.  (*Id*).  The ALJ applied the five-step disability analysis to plaintiff's claims and found at step one that plaintiff had not engaged in substantial gainful activity since November 1, 2008, the alleged onset date.  (*Id*. at 106).  At step two, the ALJ found that plaintiff has the following severe impairments: status post cervical fusion and two lumbar laminectomies; status post thyroid cancer; obesity; multiple sclerosis; carpal tunnel syndrome; and ulnar neuropathy (20 CFR 404.1520(c) and 416.920(c).  (*Id*.)  The ALJ then concluded that the claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments.  (*Id*. at 108).  As such, the ALJ found that the claimant has the residual functional capacity ("RFC") to perform:

> sedentary work as defined in 20 CFR 404.1567(a) and
> 416.967(a) except she is limited to occasional postural;
> there can be no concentrated exposure to heights and
> machinery; she must avoid concentrated exposure to
> extreme heat, cold and humidity; and she would require a

sit/stand option.

(*Id*. at 108-109).  The ALJ next determined that claimant could not perform any of her past relevant work.  (*Id*. at 112).  The ALJ concluded that considering claimant's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that the claimant can perform.  (*Id*. at 113).  As such, the ALJ concluded that plaintiff has not been under a disability from November 1, 2008, through the date of his decision.  (*Id*. at 114)

  B. <u>Plaintiff's Claims of Error</u>

   1. Listing 1.04A

Plaintiff argues that the ALJ's determination that plaintiff's impairments do not meet or medically equal Listing 1.04(A) is not supported by substantial evidence.  (Dkt. 15, Pg ID 2043).  Plaintiff first contends that her impairment is the medical equivalent of Listing 1.04(A), in that it is "equal in severity and duration to the criteria of [the] listed impairment."  20 C.F.R. § 416.926(a); 20 C.F.R. § 404.1526(a).  Plaintiff additionally argues that the ALJ neglected to explain or properly analyze why her impairments do not meet or medically equal Listing 1.04(A).  Plaintiff says that in considering presumptive disability at Step 3 of the sequential evaluation, "an ALJ must analyze the claimant's impairments in relation to the Listed Impairments and must give a reasoned explanation of his findings and conclusions in order to facilitate meaningful review."  *See*

4

*Christephore v. Comm'r Soc. Sec.*, 2012 WL 2274328, at *6 (E.D. Mich. June 18, 2012) (*citing Reynolds v. Comm'r Soc. Sec.*, 424 F. App'x 411, 416 (6th Cir. 2011)).  According to plaintiff, the ALJ was required to evaluate the evidence, compare it to Section 1.00 of the Listing, and give an explained conclusion in order to facilitate a meaningful review.  However, at Step 3 here, the ALJ merely regurgitated the Listing language and failed to specifically identify the reasons for determining that plaintiff failed to meet Listing 1.04(A).

Plaintiff presents evidence that she claims qualify her to meet or equal Listing 1.04(A) including MRI evidence of her cervical and lumbar spine that document disc protrusions with nerve root displacement and mass effect.  (Dkt. 12-7, Pg ID 403-404, 440, 568; Dkt. 12-9, Pg ID 879, 984).  Plaintiff also presents evidence of positive straight-leg raise testing.  (Dkt. 12-7, Pg ID 411, 567).  She has also undergone a right L5-S1 laminectomy with discectomy (*Id*. at 554), a cervical discectomy and fusion from C5-C7 (Dkt. 12-8, Pg ID 805), and a revision decompressive lumbar laminectomy with bilateral foraminotomies from L4-S1, an L4-L5 bilateral discectomy, and neurolysis.  (Dkt. 12-7, Pg ID 472).  Plaintiff also points to a demonstrated decreased sensation in the left S1 distribution (*Id*. at 464) and decreased range of motion, tenderness, and spasms.  (Dkt. 12-9, Pg ID 928).  Furthermore, plaintiff claims that she has been admitted to the hospital numerous times due to pain complaints.

Plaintiff argues that the ALJ's failure to articulate Step 3 findings is not harmless.  To the contrary, the district court's review of the record evidence leaves open the possibility that a Listing is met or equaled.  *See Reynolds v. Comm'r Soc. Sec.*, 424 Fed. Appx. at 416 ("in this case, correction of such an error is not merely a formalistic matter of procedure, for it is possible that the evidence [the plaintiff] put forth could meet this listing"); *see also May v. Astrue*, 2011 WL 3490186, at *9 (N.D. Ohio June 1, 2011).  Because the court cannot conclude that the ALJ's error is harmless, plaintiff argues that a remand is appropriate.

2.     Treating Physician Rule

Plaintiff argues that the ALJ's decision to reject her treating physician, Dr. Calton's, opinion is not supported by substantial evidence and the ALJ failed to comply with the procedural aspects of the treating physician rule.  (Dkt. 15, Pg ID 2047).

Plaintiff specifically contends that the ALJ summarizes a very narrow portion of Dr. Calton's RFC assessment in his decision and continues to discount the opinion by giving it "little weight."  (Dkt. 12-2, Pg ID 111).  The ALJ opines that "the source statement indicates even greater limitations than the claimant acknowledged during her consultative examination, which casts doubt onto the veracity of this form."  (*Id*.)  The ALJ also indicates that "frequent clinical examinations have shown that the claimant walks with a normal gait and has

6

strength in all of her extremities." (*Id*.)  Plaintiff argues that the ALJ's reasoning

is inaccurate and not supported by substantial evidence.  Plaintiff notes a May 14,

2012 CE report indicating that "she is able to sit for 1-2 hours." (Dkt. 12-9, Pg ID

1022).  Plaintiff avers that the report does not indicate if this is at a "single time,"

or over an "8-hour workday." (*Id*.)  In addition, plaintiff points out that the CE

report is dated nearly a year prior to Dr. Calton's report.  (Dkt. 12-9, Pg ID 1022;

Dkt. 12-12, Pg ID 1953).  Plaintiff also notes that the ALJ fails to identify where

in the record there are "frequent clinical examinations" that indicate plaintiff's

higher level of functioning.  Furthermore, even if plaintiff has a "normal gait" and

"full strength" in her extremities, it certainly does not mean that she is without

pain, or that she does not have disabling limitations.  Plaintiff concludes that the

ALJ's reasoning is not supported by substantial evidence, and his vague and

conclusory explanation cannot constitute the "good reasons" contemplated by SSR

96-2p.

### 3.    RFC Assessment - Mental Limitations

Plaintiff also contends that the ALJ's RFC assessment fails to account for

plaintiff's "mild" limitations in concentration, persistence, or pace.  (Dkt. 15, Pg

ID 2050).  Here, the ALJ indicated that plaintiff had mild limitations in

concentration, persistence, or pace (Dkt. 12-2, Pg ID 107), however, after Step 2

of the sequential evaluation, plaintiff argues that it is not clear that the ALJ

considered plaintiff's mental limitations.  As a result, plaintiff contends that the ALJ's failure to consider plaintiff's mental impairments in the RFC prevents this court from determining if the RFC assessment is supported by substantial evidence.

C.      The Commissioner's Motion for Summary Judgment

1.      Listing 1.04A

The Commissioner contends that the ALJ's decision that plaintiff failed to satisfy the evidentiary requirements of Listing 1.04A is supported by substantial evidence and should be affirmed.  (Dkt. 17, Pg ID 2062).  To satisfy Listing 1.04A, the Commissioner says that plaintiff needed to show that: (1) she has a spinal disorder (e.g., herniated nucleus pulposus, spinal stenosis, degenerative disc disease); (2) the disorder results in the compromise of a nerve root or the spinal cord; and (3) there is "[e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)." 20 C.F.R. Pt. 404, Subpt. P, App'x 1 § 1.04A.  The Commissioner then goes on to identify record evidence (*Id.* at 2063-2069) which it claims shows that plaintiff did not meet her burden of proof in showing that her conditions satisfy the Listing requirements.

The Commissioner acknowledges that the ALJ did not discuss all of the elements at length at Step 3; however, the Commissioner contends that the ALJ's discussion of the evidence in fashioning the RFC determination leaves no room for doubt that plaintiff has not satisfied the requirements of Listing 1.04A.

2.      Treating Physician Rule

The Commissioner agrees with plaintiff that an ALJ "'will' give a treating source's opinion controlling weight if it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] case record.'" *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011) (quoting 20 C.F.R. § 404.1527(c)(2)).  Further, if the ALJ does not give the treating physician's opinion controlling weight, the ALJ must give "good reasons" for having done so. *Hensley*, 573 F.3d at 267 (citing 20 C.F.R. § 1527(c)(2)).

On April 5, 2013, Dr. Calton completed a physical RFC questionnaire and concluded that plaintiff would likely be "off-task" 25% of the time or more.  (Dkt. 12-12, Pg ID 1948).  Dr. Calton also estimated that plaintiff could walk for less than one block before needing to rest because of severe pain, could sit for thirty minutes at a time before needing to get up, and could stand for thirty minutes before needing to sit down or walk around.  (*Id.*)  He opined that plaintiff could only stand or sit for a total of two hours each during an eight-hour workday, and

must be permitted to walk every thirty minutes, take unscheduled breaks every hour (lasting up to ten minutes each), and use a cane while walking. (*Id*. at 1949). Dr. Calton also opined that plaintiff could only rarely lift up to ten pounds. (*Id*.) He also estimated that she would miss up to four days of work per month. (*Id*. at 1950).

> In discussing Dr. Calton's opinion, the ALJ wrote:

> > the claimant's primary care physician also completed a medical source statement on behalf of the claimant, indicating that she could be expected to miss more than four days of work a month, amongst other limitations [Tr. 1896-99]. This source statement indicates even greater limitations than the claimant acknowledged during her consultative examination which casts doubt onto the veracity of this form. For instance, Dr. Calton [sic] indicated that the claimant would not be able to sit for even two hours during an eight-hour workday, while the claimant indicated that she could sit for up to an hour or two at a time (Exhibit 11F). Further, frequent clinical examinations have shown that the claimant walks with a normal gait and has full strength in all of her extremities, which would indicate[] a higher level of functioning than what is acknowledged in this source statement. As such, this assessment is given little weight.

(Dkt. 12-2, Pg ID 111). The Commissioner argues that Dr. Calton's opinion is supported by substantial evidence.

> The ALJ discounted Dr. Calton's opinion because it was inconsistent with the plaintiff's own admissions during a consultative examination where she indicated that she could sit for one to two hours. (Dkt. 12-9, Pg ID 1022; Dkt. 12-

12, Pg ID 1948).  Plaintiff alleges that she might have meant that she could only sit for one to two hours "during an eight hour work-day," but this is unlikely argues the Commissioner given that plaintiff told Dr. Manyam that she could walk for one to three blocks, and climb five to ten steps–abilities that are most reasonably understood to mean "at one time," not during an eight-hour work day, as plaintiff urges.

The Commissioner also avers that Dr. Calton's walking limitations are inconsistent with the record evidence.  Dr. Calton opined that plaintiff needed a cane to walk and could not walk more than one block before needing to rest.  (Dkt. 12-12, Pg ID 1948-49).  In contrast, Dr. Manyam, noted that plaintiff brought a cane to her examination but was not dependant on it for walking.  (Dkt. 12-9, Pg ID 1023).  Other notes consistently show that plaintiff walked with a normal gait and required no assistive device.  (*See e.g.*, Dkt. 12-2, Pg ID 59, 64-65, 83; Dkt. 12-7, Pg ID 429-30, 432, 434, 437, 503-04, 539; Dkt. 12-8, Pg ID 609-11, 615-16, 618, 621, 624, 627, 630, 638; Dkt. 12-9, Pg ID 927, 947, 1023; Dkt. 12-10, Pg ID 1283; Dkt. 12-11, Pg ID 1856).  The Commissioner also argues that there is no evidence to support Dr. Calton's opinion that plaintiff could rarely lift less than ten pounds.  (Dkt. 12-12, Pg ID 1949).  Rather, the treatment notes show that plaintiff possessed full strength in her extremities.  (*See e.g.*, Dkt. 12-2, Pg 59, 64-65, 83; Dkt. 12-7, Pg ID 429-30, 432, 434, 437, 461, 539; Dkt. 12-9, Pg ID 947;

Dkt. 12-7, Pg ID 488, 503-04; Dkt. 12-8, Pg ID 609-11; Dkt. 12-9, Pg ID 927, 1024; Dkt. 12-10, Pg ID 1285; Dkt. 12-11, Pg ID 1856; Dkt. 12-12, Pg ID 2020). Additionally, the Commissioner contends that Dr. Calton's opinion that plaintiff would miss four days of work per month is not an opinion, but conjecture. *See* *Murray v. Comm'r*, 1:10-v-97, 2011 WL 4346473, at * 7 (W.D. Mich. Aug. 25, 2011) ("A treating physician's estimate of how often a patient who is not working would likely be absent from work if he had a job is not a medical opinion, and it is not entitled to any particular weight.") (collecting cases).  For these reasons, the Commissioner contends that the ALJ gave good reasons for giving less weight to Dr. Calton's opinion and that finding is supported by substantial evidence.

### 3.    RFC Assessment - Mental Limitations

The Commissioner contends that the ALJ did not err by not including a limitation for concentration, persistence, or pace ("CPP") in the RFC assessment. (Dkt. 17, Pg ID 2075).  Here, the ALJ determined that plaintiff's anxiety caused no limitations in activities of daily living or social functioning, and just mild limitations in concentration, persistence, or pace.  (Dkt. 12-2, Pg ID 107).  As such, the ALJ concluded that plaintiff's "anxiety does not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and is therefore nonsevere."  (Dkt. 12-2, Pg ID 107).  *See* 20 C.F.R. 404.1520a(d)(1).  The ALJ went on to support his CPP finding by stating:

12

> As noted above, the claimant continues to drive, and in her Function Report, the claimant indicated that she can pay bills, count change, handle a savings account, and use a checkbook/money order [Tr. 239]. Julia Czarnecki, LLP, the consultative examiner, noted that the claimant recalled six digits forwards and three digits backwards, while being able to recall two of three items after three minutes. The claimant's thinking was logical, spontaneous, and goal directed, and the claimant performed basic calculations [Tr. 971-72]. Thus, the claimant has only a mild limitation in her concentration, persistence, and pace.

(Dkt. 12-2, Pg ID 107).  Moreover, the Commissioner argues that the opinion evidence supports the ALJ's finding.  For example, Dr. Czarnecki opined that plaintiff's psychiatric symtoms were well managed with medication and "do not appear to be interfering with her ability to do work related activities."  (Dkt. 12-9, Pg ID 1030).  Similarly, Dr. Ruqiya Tareen opined that plaintiff had just "mild limitations" in concentration, persistence, or pace.  (Dkt. 12-3, Pg ID 152).  The only opinion that conflicted with this opinion was Dr. Calton's, who opined that plaintiff would be off-task 25% or more of the time.  (Dkt. 12-12, Pg ID 1948).  However, as discussed above, the Commissioner urges that the ALJ reasonably discounted Dr. Calton's opinions because of their internal inconsistencies.  The Commissioner also identifies other substantial evidence that supports the ALJ's finding that plaintiff had no work-related limitations in concentration, persistence, or pace.  For example, on May 14, 2010, Dr. Calton observed that plaintiff was not

experiencing anxiety or an inability to concentrate.  (Dkt. 12-8, Pg ID 609-11).

Dr. Brett R. Todd made similar findings on May 17, 2010, observing that plaintiff

had a normal mood and affect, behavior, judgment, and thought content.  (Dkt. 12-

9, Pg ID 927).  Plaintiff's memory and cognition were again assessed to be normal

on July 13, 2010.  (Dkt. 12-8, Pg ID 759).  On July 31, 2010, plaintiff denied

depression and was not anxious or nervous.  (Dkt. 12-8, Pg ID 753).  And in

September 2013, Dr. Calton noted that plaintiff's attention and concentration were

normal.  (Dkt. 12-2, Pg ID 58).  The Commissioner argues that plaintiff has failed

to show that she has limitations in concentration, persistence, or pace and the

ALJ's conclusion on this point is supported by substantial evidence.

      D.    <u>Plaintiff's Reply Brief</u>

Plaintiff argues that the Commissioner impermissibly attempts to make a

*post-hoc* rationalization of the ALJ's decision.  (Dkt. 19, Pg ID 2086).

Specifically, plaintiff says that it is the duty of the ALJ, not the Commissioner or

this Court to ensure that the Step 3 determination is supported by substantial

evidence.  *See Christephore v. Comm'r Soc. Sec.*, 2012 WL 2274328, at *6 (E.D.

Mich. June 18, 2012) (Roberts, J.) ("[I]t is not the Court's job to conduct a de

novo review of the evidence or to rubber stamp the ALJ's decision. The Court

must ensure both that the ALJ applied the correct legal standard and that his

decision is supported by substantial evidence.  Moreover, it is the ALJ's rationale

14

that is under review, not defense counsel's.").  Plaintiff also argues that the ALJ's conclusory statements regarding discounting the opinions of her treating physician suffer from the same deficiency.

Finally, plaintiff contends that once the ALJ recognized the presence of her severe impairments at Step 2, the ALJ had an obligation to consider those impairments in combination with plaintiff's non-severe impairments of anxiety and adjustment reaction disorder.  *See Simpson v. Comm'r of Soc. Sec.*, 344 Fed. Appx. 181, 190-191 (6th Cir. 2009).  Plaintiff agues that the ALJ's RFC discussion spans four pages and does not discuss plaintiff's psychological impairments.  (Dkt. 12-2, Pg ID 109-112).  As such, plaintiff argues that this court is unable to determine if the RFC assessment is supported by substantial evidence and should be remanded for a proper consideration of plaintiff's mental impairments.

### E.    The Commissioner's Sur-Reply

The Commissioner submitted a sur-reply indicating that it believed plaintiff's reply brief raised no new issues and, as such, the Commissioner incorporated and relied on the arguments from its primary brief.  (Dkt. 20).

## III.   DISCUSSION

### A.    Standard of Review

In enacting the social security system, Congress created a two-tiered system

in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters*, 127 F.3d at 528. In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses,

including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as

17

a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only. *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. Appx. 521, 526 (6th Cir. 2006).

B.     Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits."

*Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994);

*accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. Appx. 515, 524 (6th Cir. 2003).

There are several benefits programs under the Act, including the Disability

Insurance Benefits Program (DIB) of Title II (42 U.S.C. §§ 401 *et seq*.) and the

Supplemental Security Income Program (SSI) of Title XVI (42 U.S.C. §§ 1381 *et*

*seq*.).  Title II benefits are available to qualifying wage earners who become

disabled prior to the expiration of their insured status; Title XVI benefits are

available to poverty stricken adults and children who become disabled.  F. Bloch,

Federal Disability Law and Practice § 1.1 (1984).  While the two programs have

different eligibility requirements, "DIB and SSI are available only for those who

have a 'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).

"Disability" means:

> inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or
> which has lasted or can be expected to last for a
> continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a)

(SSI).

The Commissioner's regulations provide that disability is to be determined

through the application of a five-step sequential analysis:

>Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

>Step Two:  If the claimant does not have a severe impairment or combination of impairments, that "significantly limits ... physical or mental ability to do basic work activities," benefits are denied without further analysis.

>Step Three:  If plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.

>Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

>Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing,

20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner

makes a dispositive finding at any point in the five-step process, the review

terminates."  *Colvin*, 475 F.3d at 730.

   "Through step four, the claimant bears the burden of proving the existence

and severity of limitations caused by her impairments and the fact that she is

precluded from performing her past relevant work." *Jones*, 336 F.3d at 474, cited

with approval in *Cruse*, 502 F.3d at 540.  If the analysis reaches the fifth step

without a finding that the claimant is not disabled, the burden transfers to the

Commissioner. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006).

At the fifth step, the Commissioner is required to show that "other jobs in

significant numbers exist in the national economy that [claimant] could perform

given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at

241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the

decision must be affirmed even if the court would have decided the matter

differently and even where substantial evidence supports the opposite conclusion.

*McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545.  In other words, where

substantial evidence supports the ALJ's decision, it must be upheld.

C.     Legal Analysis

1.     Listing 1.04A

 Plaintiff complains that the ALJ's Step 3 analysis is flawed.  Specifically,

plaintiff argues that the ALJ failed to properly evaluate whether her degenerative

disc disease would meet Listing 1.04A. The ALJ's entire Step 3 finding regarding

Listing 1.04A consists of the following statement:  "The claimant's impairment of

degenerative disc disease does not meet Listing 1.04 because they do not have one of the listed disorders ... in conjunction with evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss ... accompanied by sensory or reflex loss, and, in connection with the lumbar spine impairment, also a positive straight leg raising test (sitting and supine)." (Dkt. 12-2, Pg ID 108).

Under the theory of presumptive disability, a claimant is eligible for benefits if he or she has an impairment that meets or medically equals a Listed Impairment. *See Christephore v. Comm'r of Soc. Sec.*, 2012 WL 2274328, at *6 (E.D. Mich. June 18, 2012). When considering presumptive disability at Step Three, "an ALJ must analyze the claimant's impairments in relation to the Listed Impairments and must give a reasoned explanation of his findings and conclusions in order to facilitate meaningful review." *Id.* (citing *Reynolds v. Comm'r of Soc. Sec.*, 424 Fed. Appx. 411, 416 (6th Cir. 2011)). An ALJ's failure to sufficiently articulate his Step Three findings is error. *See M.G. v. Comm'r of Soc. Sec.*, 861 F. Supp. 2d 846, 858-59 (E.D. Mich. 2012); *see also Reynolds*, 424 Fed. Appx. at 416; *Tapp v. Astrue*, 2011 WL 4565790, at *5 (E.D. Ky. Sept. 29, 2012) (discussing reversal in a series of cases where the ALJ "made only a blanket statement that the claimant did not meet or equal a Listing section"). For example, in *Andrews v. Commissioner of Social Security*, 2013 WL 2200393 (E.D. Mich. May 20, 2013),

22

plaintiff argued that the ALJ erred in failing to consider whether her cervical and lumbar spine impairments meet or medically equal Listing 1.04A for "disorders of the spine." *Id.* at *11.  The ALJ there simply stated "[t]he claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments...." *Id.*  The court noted that the ALJ explicitly found that plaintiff suffers from degenerative disc disease and cervical spondylosis, and thus "should have considered and discussed [plaintiff's] impairment(s) relative to Listing 1.04A," and "[h]er failure to do so constitutes legal error." *Id.* at *12.

The ALJ here explicitly found that plaintiff suffers from degenerative disc disease, and that this impairment is severe, and thus he should have considered and discussed this impairment relative to Listing 1.04A.  The ALJ's failure to do so constitutes legal error.  *See M.G.*, 861 F.Supp.2d at 846; *see also Andrews*, 2013 WL 2200393, at *11-12.  Importantly, even the Commissioner acknowledges that the ALJ failed to make the required discussion at Step 3.  (Dkt. 17, at Pg ID 2069-70).

The court, however, will not overturn an ALJ's decision if the failure to articulate Step 3 findings was harmless.  *See M.G.*, 861 F. Supp. 2d at 859.  Such an error is harmless where "concrete factual and medical evidence is apparent in the record and shows that even if the ALJ had made the required findings, the ALJ would have found the claimant not disabled...." *Id.* at 861 (citation omitted,

23

emphasis in original).  This is because the Sixth Circuit "has consistently rejected a heightened articulation standard, noting ... that the ALJ is under no obligation to spell out 'every consideration that went into the step three determination' or 'the weight he gave each factor in his step three analysis,' or to discuss every single impairment." *Andrews*, 2013 WL 2200393, at *12 (citing *Staggs v. Astrue*, 2011 WL 3444014, at *3 (M.D. Tenn. Aug.8, 2011) (citation omitted)).  As the *Staggs* court further stated, "[n]or is the procedure so legalistic that the requisite explanation and support must be located entirely within the section of the ALJ's decision devoted specifically to step three; the court in *Bledsoe* implicitly endorsed the practice of searching the ALJ's entire decision for statements supporting his step three analysis." *Staggs*, 2011 WL 3444014, at *3 (citing *Bledsoe v. Barnhart*, 165 Fed. Appx. 408, 411 (6th Cir. 2006)).  Thus, remand is not required where the evidence makes clear that even if the ALJ "had made the required findings, [she] would have found the claimant not disabled." *M.G.*, 861 F. Supp. 2d at 861.  Conversely, remand is appropriate in cases where the court's review of the ALJ's decision and the record evidence leaves open the possibility that a listing is met. *See Reynolds*, 424 Fed. Appx. at 416 ("in this case, correction of such an error is not merely a formalistic matter of procedure, for it is possible that the evidence [the plaintiff] put forth could meet this listing").

Here, in order for plaintiff to meet the criteria of Listing 1.04A, she must

24

show that she has a disorder of the spine with: "Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)." 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 1.04A.   It is well-settled that to "meet" a listing, a claimant's impairments must satisfy each and every element of the listing. *See Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *Blanton v. Soc. Sec. Admin*., 118 Fed. Appx. 3, 6 (6th Cir. 2004).  Even if plaintiff cannot demonstrate that she meets the criteria of Listing 1.04A, however, she can still satisfy her burden at Step Three by proving that she has an impairment (or combination of impairments) that medically equals this Listing.  To do so, she must "present medical evidence that describes how [her] impairment is equivalent to a listed impairment." *Lusk v. Comm'r of Soc. Sec.*, 106 Fed. Appx. 405, 411 (6th Cir. 2004).  This means that plaintiff must present medical findings showing symptoms or diagnoses equal in severity and duration "to all the criteria for the one most similar listed impairment." *Daniels v. Comm'r of Soc. Sec*., 70 Fed. Appx. 868, 874 (6th Cir. 2003).

In this case, the record shows that plaintiff has experienced conditions affecting both her lumbar and cervical spine.  (Dkt. 12-7, Pg ID 440, 500).

Plaintiff underwent two surgeries in an attempt to correct her lumbar spine

conditions, in February 2008, and in December 2009. (Dkt. 12-7, Pg ID 472-73;

Dkt. 12-7, Pg ID 553-54). The ALJ notes that following those two surgeries, there

is little evidence of nerve root compression in plaintiff's lumbar spine. A month

following her February surgery, plaintiff reported that her lower back and legs

were feeling great and that she was happy with the surgical outcome. (Dkt. 12-2,

Pg ID 110). In March 2009, the ALJ noted that plaintiff's lower back pain, and an

October 2009 MRI of her lumbar spine showed mild to moderate degenerative

changes at L4-L5 and L5-S1, with a disk herniation at L4-5.

The ALJ also considered evidence of plaintiff's range of motion, whether

she had any sensory or reflex loss, and the presence of any positive straight-leg

raising tests. In June 2010, plaintiff presented to the Beaumont emergency

department with complaints of lower back pain and lower left extremity pain. The

ALJ noted that an MRI taken at that time did not show any evidence of recurrent

stenosis, and plaintiff was observed to be ambulatory. (*Id*). Further, the ALJ

noted that a straight-leg raising test conducted one month earlier was negative, and

plaintiff maintained 5/5 strength in her bilateral lower extremities. (Dkt. 12-2, Pg

ID 110; Dkt. 12-10, Pg ID 1270). In December 2011, plaintiff again presented to

the Beaumont emergency department with complaints of lower back pain, but

upon examination she was seen ambulating without difficulty and exhibited 5/5

26

strength in all of her extremities, although she did have a positive straight-leg raising test on the left side.  (Dkt. 12-2, Pg ID 110; Dkt. 12-10, Pg ID 1332-1341).  Finally, the ALJ noted that Dr. Brady Vibert, one of plaintiff's treating physicians examined her in January 2012 and concluded that plaintiff had a negative straight-leg raising test and that she could perform activities as tolerated with no restrictions.  (Dkt. 12-2, Pg ID 110; Dkt. 12-11, Pg ID 1554-1676).  In addition to these findings, the ALJ noted that plaintiff's neurologist, in March 2012, indicated that plaintiff demonstrated normal muscle strength and an appropriate gait.  (Dkt. 12-2, Pg ID 110; Dkt. 12-11, Pg ID 1853-1864).  Further, consultative examiner, Dr. Lasmi Manyam, concluded that plaintiff was not dependent on her cane for ambulation.  (Dkt. 12-9, Pg ID 1022-1029).  During Dr. Manyam's consultation, plaintiff reported that she could sit for 1-2 hours, walk 1-3 blocks, and climb 5-10 steps.  (*Id.*)  In January 2013, plaintiff informed her treating physician that her chronic back pain was unchanged.  (Dkt. 12-12, Pg ID 1956-2015).  And, in April 2013, plaintiff reported to her neurologist that she had chronic, but controlled pain.  (Dkt. 12-11, Pg ID 1853-1864).

It does not appear to the undersigned that plaintiff offers the requisite record evidence to support her contention that the ALJ should have found at Step Three that her lumbar impairment satisfies the criteria of Listing 1.04A. *See Roby*, 48 Fed. Appx. at 536 ("The claimant has the burden at the third step of the sequential

evaluation to establish that he meets or equals a listed impairment.") (internal citations omitted). Accordingly, although the ALJ did not provide an extensive discussion of whether plaintiff's impairments met or equaled Listing 1.04A, a review of the ALJ's decision and the record shows that such an error was harmless.

### 2.   RFC Assessment - Mental Limitations

Plaintiff also argues that the ALJ erred when he failed to incorporate her mild limitations in concentration, persistence, or pace ("CPP") into the RFC assessment.  Specifically, plaintiff claims that at Step 3 of the sequential evaluation process the ALJ determined that plaintiff had "mild limitations" in concentration, persistence, or pace; however, the RFC assessment fails to incorporate any psychological impairments whatsoever. In assessing the "paragraph B" criteria, the ALJ determined that plaintiff had "mild" limitations in CPP.  (Dkt. 12-2, Pg ID 107).  The ALJ opined,

> As noted above, the claimant continues to drive, and in her Function Report, the claimant indicated that she can pay bills, count change, handle a savings account, and use a checkbook/money orders (Exhibit 5E). Julia Czarnecki, LLP, the consultative examiner, noted that the claimant recalled six digits forwards and three digits backwards, while being able to recall two of three items after three minutes. The claimant's thinking was logical, spontaneous, and goal directed, and the claimant performed basic calculations (Exhibit 10F). Thus, the claimant has only a mild limitation in her concentration,

persistence, and pace.

(Dkt. 12-2, Pg ID 107)

However, this Court has concluded that mild limitations do not require

incorporation into an RFC assessment. *Boley v. Astrue*, No. 11-10896, 2012 WL

680393, at *14 (E.D. Mich. Feb. 10, 2012) report and recommendation adopted,

No. 11-CV-10896, 2012 WL 680392 (E.D. Mich. Mar. 1, 2012) (citing *Carrigan*

*v. Astrue*, No. 10-303, 2011 U.S. Dist. LEXIS 109460 at *22, 2011 WL 4372651

(D. Vt. Aug. 26, 2011) adopted by 2011 U.S. Dist. LEXIS 105982, 2011 WL

4372494 (D. Vt. Sept.19, 2011) (finding that mild restrictions did not require

incorporation into RFC).  For this reason, the undersigned finds that the ALJ did

not err by not incorporating plaintiff's "mild limitations" in CPP into the RFC.

> 3.    Treating Source Rule

Last, plaintiff claims that the ALJ discounted the opinion of her treating

physician, Dr. Calton, regarding the disabling nature of her limitations.  An

opinion from a medical source who has examined a claimant is given more weight

than that from a source who has not performed an examination (a "non-examining

source"), and an opinion from a medical source who regularly treats the claimant

(a "treating source") is afforded more weight than that from a source who has

examined the claimant but does not have an ongoing treatment relationship (a

"non-treating source").  *Gayheart v. Comm'r of Soc. Sec*., 710 F.3d 365, 375 (6th

29

Cir. 2013) (internal citations omitted).  An ALJ is required to evaluate every medical opinion of record, and set forth a valid basis for rejecting any. 20 C.F.R. § 404.1527; *see Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987).  The Commissioner may not disregard opinions of a consulting physician which are favorable to a claimant.  *See Lashley v. Sec'y*, 708 F.2d 1048, 1054 (6th Cir. 1983).  Moreover, "in weighing medical evidence, 'ALJs must not succumb to the temptation to play doctor and make their own independent medical findings.'" *Allen v. Comm'r of Soc. Sec.*, No. 12-15097, 2013 WL 5676254, at *15 (E.D. Mich. Sept. 13, 2013) (citing *Simpson v. Comm'r of Soc. Sec.*, 344 Fed. Appx. 181, 194 (6th Cir. 2009)).  An ALJ may not substitute his [or her] own medical judgment for that of a treating or examining doctor where the opinion of that doctor is supported by the medical evidence.  *See Simpson*, 344 Fed. Appx. at 194; *see also Bledsoe v. Comm'r of Social Sec.*, 2011 WL 549861, at *7 (S.D. Ohio 2011) ("An ALJ is not permitted to substitute her own medical judgment for that of a treating physician and may not make her own independent medical findings."); *Mason v. Comm'r of Soc. Sec.*, 2008 WL 1733181, at * 13 (S.D. Ohio 2008) ("[t]he ALJ must not substitute his own judgment for a doctor's conclusion without relying on other medical evidence or authority in the record."). In other words, "[w]hile an ALJ is free to resolve issues of credibility as to lay testimony, or to choose between properly submitted medical opinions, the ALJ cannot

30

substitute his [or her] own lay 'medical' opinion for that of a treating or examining doctor." *Beck v. Comm'r of Soc. Sec.*, 2011 WL 3584468, at *14 (S.D. Ohio 2011). This is so even though the final responsibility for the RFC determination is an issue reserved to the Commissioner. *Allen*, 2013 WL 5676254, at *15.

Plaintiff's primary argument is that the ALJ summarizes only a narrow portion of her treating physician, Dr. Calton's, opinion and unreasonably affords it "little weight." (Dkt. 12-2, Pg ID 111). On April 5, 2013, Dr. David Calton completed a physical RFC and indicated that plaintiff "could be expected to miss more than four days of work a month, amongst other limitations." (Dkt. 12-2, Pg ID 111; Dkt. 12-12, Pg ID 1950). Dr. Calton's opinion also indicated that as a result of plaintiff's impairments, plaintiff could walk less than one city block. (Dkt. 12-12, Pg ID 1948). Moreover, Dr. Calton opined that plaintiff could sit for 30 minutes at one time before needing to get up, and that she could stand for 30 minutes at one time before needing to sit down. (*Id.*) Dr. Calton indicated that plaintiff could sit and stand/walk for less than two hours total in an 8-hour working day (with normal breaks). (*Id.* at 1949). Dr. Calton noted that plaintiff would require a job that would allow for periods of walking around every 30 minutes, for three to four minutes each time. (*Id.*) Any job must also allow plaintiff the ability to shift positions at will from sitting, to standing, or walking. (*Id.*) The job must also allow plaintiff to take unscheduled breaks during an 8-

hour work day, one time per hour for (on average) five to ten minutes. (*Id.*) Dr. Calton also indicated that while engaged in occasional standing/walking, plaintiff must use a cane or other assistive device. (*Id.*) Plaintiff was limited to rarely lifting and carrying less than 10 pounds in a competitive work situation, and she was advised to never stoop, crouch, or climb ladders. (*Id.* at 1949-1950).

With respect to Dr. Calton's opinion regarding plaintiff's limitations, the ALJ concluded that his statement "indicates even greater limitations than the claimant acknowledged during her consultative examination, which casts doubt onto the veracity of [Dr. Calton's RFC Assessment]." (Dkt. 12-2, Pg ID 111). For example, the ALJ noted that Dr. Calton determined that plaintiff would not be able to sit for even two hours during an eight-hour workday, while during her consultative examination the claimant indicated that she could sit for up to an hour or two at a time. (Dkt. 12-9, Pg ID 1022-1029). Moreover, the ALJ indicated that "frequent clinical examinations" have shown that plaintiff walks with a normal gait and has full strength in all of her extremities, which indicates a higher level of functioning than what is acknowledged in Dr. Calton's RFC Assessment. (Dkt. 12-2, Pg ID 111). As a result, the ALJ assigned Dr. Calton's opinion "little weight." (*Id*).

The undesigned concludes that the ALJ failed to give the requisite "good reasons" when he discounted the RFC assessment of plaintiff's treating physician,

Dr. Calton.  As the Sixth Circuit stated: "This requirement [to always give good reasons] is not simply a formality; it is to safeguard the claimant's procedural rights. It is intended to let claimants understand the disposition of their cases, particularly in situations where a claimant knows that his physician has deemed him disabled and therefore might be especially bewildered when told by an administrative bureaucracy that [ ] he is not." *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011) (citation omitted).  Moreover, if the ALJ determined that plaintiff's treating physician's opinion should not be given controlling weight despite the medical evidence in support, "the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician." *Blakley v. Comm'r of Soc. Sec.,* 582 F.3d 399, 406 (6th Cir. 2009).  This was not done either.  And, even if Dr. Calton's opinion was not entitled to controlling weight, it was entitled to deference.  20 C.F.R. § 404.1527(d)(2)(I).  As explained in SSR 96-2p, adjudicators must remember that a finding that a treating source medical opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to controlling weight not that the opinion should be rejected.  Treating source

33

medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 CFR 404.1527 and 416.927.  In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.

The undersigned finds that the ALJ did not adequately address why Dr. Calton's opinion should not be given controlling weight or even deference, as required by the regulations.  20 C.F.R. § 404.1527(d)(2).  Although the ALJ's finding that plaintiff was not disabled ultimately may be justified, as the Commissioner urges in its brief, if an ALJ fails to explain why he rejected or discounted the opinion and how those reasons affected the weight accorded the opinion, the Court must find that substantial evidence is lacking, "even where the conclusion of the ALJ may be justified based upon the record." *Rogers*, 486 F.3d at 243 (citation omitted).

## IV.   RECOMMENDATIONS

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **GRANTED IN PART AND DENIED IN PART**, that defendant's motion for summary judgment be **GRANTED IN PART AND DENIED IN PART**, and that the findings of the Commissioner be **REVERSED IN PART AND REMANDED** for proceedings in accordance with this report and recommendation.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may

35

rule without awaiting the response.

Date: February 29, 2016        s/Stephanie Dawkins Davis
                                         Stephanie Dawkins Davis
                                         United States Magistrate Judge

## CERTIFICATE OF SERVICE

I certify that on February 29, 2016, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to all counsel of record.

                                         s/Tammy Hallwood
                                         Case Manager
                                         (810) 341-7887
                                         tammy_hallwood@mied.uscourts.gov